Samuel W. Eastman (CA SBN/00264565)
Sam.eastman@emfirm.com
EASTMAN MEYLER, PC
2301 E. Riverside Dr., Ste. A-50
Austin, Texas 78741
Tel: (512) 596-1957
Fax: (512) 857-1462

Attorneys for Plaintiff, Latrina Jackson

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LATRINA R. JACKSON, | Case No. 3:17-cv-00453 |
| Plaintiff, | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF PURSUANT TO THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C § 227 *et seq.*** |
| vs. | |
| MANASSEH JORDAN MINISTRIES, INC., a New York Religious Corporation, and YAKIM MANASSEH JORDAN, an individual, | DEMAND FOR JURY TRIAL. |
| Defendants. | |

For this Complaint and Application for Permanent Injunction, Plaintiff Latrina Jackson, by and through the undersigned counsel, states as follows:

## JURISDICTION AND VENUE

1.  This action arises out of Defendants' repeated violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and Defendants' invasions of the Plaintiff's personal privacy.

2.  Supplemental jurisdiction exits pursuant to 28 U.S.C. § 1367.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), in that one or more of the Defendants transacts business in this District, Plaintiff resides in this District and a substantial portion of the acts giving rise to this action occurred in this District.

## PARTIES

4. Plaintiff Latrina Jackson (hereinafter "Plaintiff") is an adult individual, presently residing in Union City, California and is a "Person" as defined by 47 U.S.C. § 153(39).

5. Defendant Manasseh Jordan Ministries, Inc. ("MJM"), is a New York Religious Corporation.  MJM uses the address 310 Riverside Drive, New York, New York 10025.  MJM also uses the address of 708 3rd Ave., 6th Floor, New York, NY 10163.  MJM uses the website  http://www.prophetmanasseh.com/ to market, advertise and sell products and services.  MJM has organized and held speaking engagements in California and regularly transacts business with and solicits payments from the citizens of California.

6. Defendant Yakim Manasseh Jordan ("Manasseh") is an individual and citizen of the United States.  Defendant Manasseh frequently travels throughout the United States to perform speaking engagements and he regularly transacts business with and solicits payments from the citizens of California, both in person and through robocalls.

7. Whenever it is alleged herein that Defendants did any act, it is meant that:

   a. The Defendant(s) performed or participated in the act, and/or

   b. The Defendants' officers, agents, trustees or employees performed or participated in the act on behalf of and under the authority of Defendants.

## FACTS

***The Telephone Consumer Protection Act, 47 U.S.C. § 227***

8. In an effort to protect consumers against invasive and unauthorized telemarketing calls, Congress enacted the Telephone Consumer Protection Act of 1991 (TCPA), Pub. L. No. 102-243, 105 Stat. 2394, *codified as amended at* 47 U.S.C. § 227, to "ban all computerized calls to the home"—including "all autodialed calls * * * [to] cellular phones"— "unless the called party consents to receiving them, or unless the calls are made for emergency purposes." S. Rep. No. 102-178, at 6 (1991); *see also Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 384, 132 S. Ct. 740, 752 (2012) (the TCPA restricts "computerized calls to private homes" and other "abuses of telephone technology").

9. Congress also specifically found that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call…." TCPA, Pub. L. No. 102-243 at §§ 12-13. See also, *Mims*, 132 S. Ct. at 744.

10. As quoted by the United States Supreme Court, Senator Fritz Hollings, the sponsor of the TCPA, stated on the floor of the United States Senate:

> Computerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall. *Id.*

11. The problems Congress identified have grown only worse in recent years as the use of automated calls has exploded. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. TCPA § 2(3), 105 Stat. at 2394. By 2003, telemarketers were calling 104 million Americans every day, abetted by the proliferation of new and more powerful autodialing technology. *In the Matter of*

*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003) ("*2003 TCPA Order*").

12. The TCPA defines an "automatic telephone dialing system" or autodialer ("ATDS") as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

13. The TCPA makes it unlawful:

> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice-
> ***
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call[.] *Id.* at § 227 (b)(1)(A)(iii).

14. A person may bring an action to enjoin a violation of 47 U.S.C. § 227(b)(1)(A)(iii). *Id.* at § 227(b)(3).

15. A person may bring an action to recover the greater of actual damages or $500.00 for a violation of 47 U.S.C. § 227(b)(1)(A)(iii). *Id.*

16. A court may award damages of up to $1,500.00 per violation if the court finds that the violations were made willfully or knowingly. *Id.*

17. The TCPA was designed to prevent calls and messages like the ones described within this complaint, and to protect the privacy of citizens like the Plaintiff.

18. As Judge Easterbrook of the Seventh Circuit explained in a TCPA case regarding calls to a non-debtor similar to this one:

> The Telephone Consumer Protection Act ... is well known for its provisions limiting junk-fax transmissions. A less-litigated part of the Act

1
2
3
4

> curtails the use of automated dialers and prerecorded messages to cell phones, whose subscribers often are billed by the minute as soon as the call is answered—and routing a call to voicemail counts as answering the call.  An automated call to a landline phone can be an annoyance; an automated call to a cell phone adds expense to annoyance.  *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012).

5
6

19. The TCPA directs the Federal Communications Commission ("FCC") to prescribe regulations implementing restrictions on the use of autodialers.  47 U.S.C. § 227(b)(2).

7
8
9
10
11

20. In 2012, the FCC emphasized that the term ATDS "covers any equipment that has the specified *capacity* to generate numbers and dial them without human intervention..." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, Declaratory Ruling, 27 F.C.C. Rcd. 15391, 15392 n.5 (2012).

12
13
14

21. According to the FCC, "Unwanted calls and texts are the number one complaint to the FCC.  There are thousands of complaints to the FCC every month on both telemarketing and robocalls.  The FCC received more than 215,000 TCPA complaints in 2014."[1]

15
16
17
18
19
20

22. The Supreme Court has confirmed that there is vicarious liability for violations of the Telephone Consumer Protection Act (TCPA) under common-law principles of agency. *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 674, 193 L. Ed. 2d 571 (2016), *as revised* (Feb. 9, 2016) (*Citing In re Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574 (2013)).

21

***Defendants' Background.***

22

23. Defendant Manasseh is the son of E. Bernard Jordan ("Jordan").

23
24
25

24. Jordan is the founder and the leader of Zoe Ministries, Inc. ("ZMI")[2], a "nonprofit," "religious" organization.

26

---

27
28

[1] https://apps.fcc.gov/edocs_public/attachmatch/DOC-333676A1.pdf (last accessed January 29, 2017).
[2] https://www.zoeministries.com/about/ (last accessed January 29, 2017).

25. ZMI owns the website https://www.zoeministries.com, which it uses to market, advertise and sell products and services.

26. Jordan is a self-identified "Master Prophet."[3]

27. As the Times Herald-Record once wrote, "[o]ver the years, preaching a gospel of prosperity and self-empowerment, Jordan built Zoe Ministries into a multimedia enterprise that collected $2.8 million from its loyal following in 2001. 'We live to give,' Jordan teaches his followers to say. And give they do."[4]

28. The Times Herald-Record wrote further, "'You sow money, you're going to reap money,' explains the bishop, seated on a red velvet couch near the foyer of his three-story mansion." *Id.*

29. ZMI used robocalling to find donors and to generate revenue.

30. As a result of consumer complaints, the FCC issued a citation letter to ZMI and Jordan for "prerecorded and autodialed call message violations."[5]  The FCC noted that "[i]f, after receipt of this citation, you or your company violates the Communications Act or the Commission's rules in any manner described herein, the Commission may impose monetary forfeitures not to exceed $16,000 for each such violation or each day of a continuing violation." *Id*.

31. Within two months of the FCC citation, three of Jordan's children (including Defendant Manasseh), along with ZMI "Prophet" Charlie Berrian,[6] incorporated MJM.[7]

32. This newly-incorporated entity, MJM, overlaps substantially with ZMI.

---

[3] http://www.bishopjordan.com/ (last accessed January 29, 2017).
[4] McKenna, Chris. *The Prophet of Profit Sows the Seeds of Wealth*. Times Herald-Record (Sept. 14, 2003) (available at http://www.recordonline.com/article/20030914/news/309149999) (last accessed January 29, 2017).
[5] *See* FCC Citation, attached as Exhibit 1.
[6] http://bishopberrian.com/ (last accessed January 29, 2017).
[7] *See* Articles of Incorporation, attached as Exhibit 2.

33. MJM and ZMI both use(d) the address 310 Riverside Drive, New York, New York 10025.

34. MJM's trustees are all members of the Jordan family or friends of the Jordan family and were all involved with ZMI.

35. At least one MJM trustee has previously listed a ZMI-owned mansion in Tuxedo Park, New York as their address.

36. Another MJM trustee lists his home address as an address associated with a ZMI phone number.

37. Both MJM and ZMI maintain the same "non-profit" status.

38. ZMI and MJM hold events jointly such as the "New Year's Eve Prophetic Fireside Conference" in 2012.[8]

39. ZMI organizes events that Defendant Manasseh speaks at such as the "PROPHECOLOGY SUMMER 2016: Prophetic Ascension."

40. Like his father, Defendant Manasseh is a self-identified "prophet."[9]

41. At the age of 26, Defendant Manasseh resides in multi-million dollar residences.

42. Within the two years prior to the filing of this pleading, Defendant Manasseh has been the registered owner of a Rolls Royce Wraith, a Rolls Royce Ghost, a Rolls Royce Phantom and a Bentley Continental.

43. The residences and vehicles owned and used by Defendant Manasseh are largely funded through "seed-faith" money donated to the "nonprofit" corporation MJM and/or ZMI.

44. On information and belief, MJM and ZMI are alter-egos of each other and act as a single business entity, with one committing TCPA torts and the other sheltering the assets

---

[8] https://prophetmanasseh.com/itinerary/pastevents (last accessed January 29, 2017).
[9] https://prophetmanasseh.com/aboutprophet#content (last accessed January 29, 2017).

received from such torts. Defendant Manasseh and Jordan enrich themselves through self-dealing and purposeful tortious conduct, thus perverting the privilege of doing business in a corporate form.

45. On information and belief, Defendant Manasseh largely exercises his domination over MJM to place the same types of robocalls ZMI previously placed, all to profit while avoiding compliance with the TCPA and potential liability from ZMI's FCC citation.

46. On information and belief, MJM and ZMI intermingle and manipulate assets, such that their assets concentrate under ZMI, Defendant Manasseh and Jordan while their TCPA tort liabilities concentrate under MJM. This leaves MJM undercapitalized for the TCPA liabilities it purposefully accrues. MJM generates proceeds through illegal robocalling while attempting to artificially limit the recovery available to the thousands of innocent consumers who never consented to interact with MJM and who are repeatedly harmed by its tortious conduct.

47. On information and belief, both MJM and ZMI have non-functioning trustees that allow Defendant Manasseh and Jordan to siphon off corporate assets for their own personal use, at will. The entities have failed to maintain arm's length relationships with their executives, as MJM and ZMI provide Defendant Manasseh and Jordan with salaries and perquisites that far exceed the reasonable market value of services provided. This directly contravenes the non-profit purposes for which such entities were purportedly created and reflects self-dealing as opposed to honest and disinterested transacting.

48. A search of "Manasseh" on 800notes.com results in 152 individual threads from consumers, with numerous complaints against Defendants in each thread, which are similar to Plaintiff's complaints.[10]

49. A search of "Manasseh" on youtube.com results in numerous videos, some posted by Defendants, and some posted by others with complaints against Defendants similar to Plaintiff's complaints.[11]

50. Defendants have previously been sued for violations of the TCPA virtually identical to those alleged by Plaintiff, most of which Defendants have settled.[12]

51. Defendant MJM was previously investigated by the Texas Public Utilities Commission and faced administrative penalties in connection with telemarketing and the use of an automatic dialing device.  Despite all of this, Defendants still find it worthwhile to continue using Defendant Manasseh's voice to make prerecorded calls.

52. Defendant Manasseh uses his alter ego, MJM, to knowingly break the law and repeatedly violate the TCPA, all to increase his personal wealth at the expense of non-consenting consumers.

53. Defendants either directly, or through the use of agents, place autodialed and prerecorded calls to individuals.

---

[10] http://800notes.com/nb/search.aspx?q=Manasseh (last accessed on January 29, 2017).

[11] https://www.youtube.com/watch?v=bSxEr5TXa1U (last accessed on January 29, 2017).

[12] *See Bankosz v. Manasseh Jordan Ministries et al.*, 6:15-cv-01182 (M.D. Fla. July 22, 2015); *Carter v. Manasseh Jordan Ministries*, 2:15-cv-14237 (S.D. Fla. June 30, 2015); *Cotto v. Manasseh Jordan Ministries et al.*, 6:15-cv-00741 (M.D. Fla. May 8, 2015); *Robles v. Manasseh Jordan Ministries et al.*, 8:15-cv-00789 (M.D. Fla. April 2, 2015), *Bundrage v. Jordan et al.*, 8:15-cv-00618 (M.D. Fla. March 20, 2015), *Linlor v. Manasseh Jordan Ministries*, 3:15-cv-00032 (S.D. Cal. Jan. 7, 2015); *Rice v. Manasseh Jordan Ministries*, 8:14-cv-02921 (M.D. Fla. Nov. 21, 2014); *Friedman v. The Prophet Manasseh Jordan Ministries*, 1:14-cv-03129 (S.D.N.Y. May 2, 2014); *Lemberg v. Manasseh Jordan Ministries*, 3:14-cv-00240 (D. Conn. Feb. 26, 2014); *Romack, et al. v. Yakim Manasseh Jordan, et al.*, 3:13-cv-02484 (N.D. Ohio Nov. 8, 2013); *Bontrager v. The Prophet Manasseh Jordan*, 2:13-cv-01853 (E.D. Cal. Sept. 6, 2013); *Ferguson v. The Prophet Manasseh Jordan Ministries*, 5:13-cv-02463 (N.D. Cal. May 31, 2013); *Alexander et al v. The Prophet Manasseh Jordan Ministries*, 3:12-cv-02584 (S.D. Cal. Oct. 23, 2012).

54. Defendants select and control the manner and content of their solicitations, placing prerecorded called, using Defendant Manasseh's voice.

55. Defendant Manasseh and his father use MJM and ZMI as sham corporations and alter-egos so that they can commit willful torts for their own personal gain, all in abuse of the Religious Corporation structure set forth by the State of New York.

*Unlawful calls to Plaintiff's cellular telephone.*

56. Starting in March, 2015, Defendants began contacting Plaintiff on Plaintiff's cellular telephone (510-XXX-9021).

57. Between March, 2015 and January, 2016, Defendants called Plaintiff's cellular telephone no less than 158 times in an attempt to solicit Plaintiff and/or sell a product or services to Plaintiff.

58. Plaintiff was unable to document all of Defendants' calls to Plaintiff's cellular telephone but the records of Defendants, or those of Defendants' agents and service providers will reflect the total number of calls.

59. Defendants, or their agents, called Plaintiff's cellular telephone using an artificial or prerecorded voice.

60. When Plaintiff answered the calls from Defendants, Plaintiff heard prerecorded message(s) from the "Prophet" Manasseh.

61. Defendants left voicemails for Plaintiff using an artificial or prerecorded voice.

62. When voicemails were left for Plaintiff, Plaintiff heard the prerecorded message(s) from the "Prophet" Manasseh.

63. The prerecorded messages Defendants made to Plaintiff were for marketing and solicitation purposes.

64. When Defendants called Plaintiff, Plaintiff never had any interaction with a live person and there was no intervention by a live person.

65. Some of the artificial or prerecorded messages provided a phone number to call, but calling the phone number would result in more soliciting by Defendants.

66. At all times relevant, Defendants, or their agents, contacted Plaintiff's cellular telephone using an ATDS and/or a prerecorded voice.

67. Plaintiff has no business relationship with Defendants and never requested, in writing or otherwise, that Defendants contact Plaintiff.

68. Plaintiff never provided Plaintiff's cellular telephone number to Defendants and never provided consent to be contacted on his cellular telephone by Defendants.

**COUNT I**
**VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT –**
**47 U.S.C. § 227**

69. Plaintiff incorporates by reference all of the above paragraphs as though fully stated herein.

70. At all times mentioned herein, and within four years prior to the filing of this action, Defendants, or their agent(s), called Plaintiff on Plaintiff's cellular telephone using an ATDS.

71. At all times mentioned herein, and within four years prior to the filing of this action, Defendants, or their agent(s), called Plaintiff on Plaintiff's cellular telephone using a prerecorded or artificial voice.

72. Plaintiff's telephone number called by Defendants was assigned to a cellular telephone service.

73. The calls from Defendants to Plaintiff were not placed for "emergency purposes" as defined by 47 U.S.C. § 227(b)(1)(A)(i).

74. Calls that Defendants and/or their agents placed to Plaintiff's cellular telephone number violated 47 U.S.C. § 227.

75. Defendants continually harassed Plaintiff with the unauthorized calls and Plaintiff suffered an invasion of privacy and a loss of privacy as a result of the actions of Defendants.

76. Despite having knowledge that their actions violated the TCPA, Defendants and/or their agents continued to place telephone calls to Plaintiff's cellular telephone.  Each such call placed to Plaintiff was made in knowing and/or willful violation of the TCPA, and subject to treble damages of up to $1,500.00 per violation pursuant to 47 U.S.C. § 227(b)(3)(C).

77. Plaintiff is entitled to an order enjoining any further violation of 47 U.S.C. § 227(b)(1)(A)(iii) pursuant to 47 U.S.C. § 227(b)(3).

78. As a result of each call made by Defendants and/or by their agents in negligent violation of the TCPA, Plaintiff is entitled to an award of the greater of actual damages or $500.00 in statutory damages pursuant to 47 U.S.C. § 227(b)(3)(B).

79. As a result of each call made by Defendants and/or by their agents in knowing and/or willful violation of the TCPA, Plaintiff is entitled to an award of treble damages in an amount up to $1,500.00 per violation pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

**<u>REQUEST FOR RELIEF</u>**

**WHEREFORE**, Plaintiff prays for the following relief against Defendants:

1. That a PERMANENT INJUNCTION be issued, restraining and enjoining Defendants, Defendants' successors, assigns, officers, agents, servants, employees and attorneys and any other person in active concert or participation with Defendants from communicating with Plaintiff in a manner that violates 47 U.S.C. § 227; and

2.  That judgment be entered against the Defendants for the greater of actual damages or statutory damages of Five Hundred Dollars ($500.00) for each and every negligent violation pursuant to 47 U.S.C. § 227(b)(3)(B); and

3. That judgment be entered against the Defendants for treble damages of up to One Thousand Five Hundred Dollars ($1,500.00) for each and every willful and/or knowing violation pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C); and

4. That the Court order such other and further relief as may be just and proper.

## TRIAL BY JURY

Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury on all counts so triable.

Date: January 30, 2017

**EASTMAN MEYLER, PC**

By: /s/ SAMUEL W. EASTMAN
SAMUEL W. EASTMAN
California State Bar No. 00264565
E-mail: sam.eastman@emfirm.com
2301 E. Riverside Dr. A-50
Austin, TX 78741
Tel: (512) 596-1957
Fax: (512) 857-1462
**ATTORNEYS FOR PLAINTIFF**

# EXHIBIT 1

**Federal Communications Commission**



# FEDERAL COMMUNICATIONS COMMISSION
## WASHINGTON, D.C. 20554

July 16, 2010

**VIA REGULAR MAIL AND CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Zoe Ministries
Attn: Bishop E. Bernard Jordan
310 Riverside Drive
New York, New York 10025

RE: EB-10-TC-435

Dear Bishop Jordan:

  This is an official **CITATION**, issued pursuant to section 503(b)(5) of the Communications Act of 1934, as amended (the Act), 47 U.S.C. § 503(b)(5), for violations of the Act and the Federal Communications Commission's rules that govern telephone solicitations, prerecorded and autodialed telephone calls and facsimile ("fax") transmissions.[1]  As explained below, future violations of the Act or Commission's rules in this regard may subject you and your company to monetary forfeitures.

  It has come to our attention that you or your company, acting under your direction, apparently sent one or more calls or faxes in violation of Section 227(b) of the Communications Act and the Commission's related rules, as described in the attached complaint(s).[2]  Specifically, one or more complaints have been filed against your company showing that your company, acting under your direction, committed the violation(s) checked below.  Once you have identified the violation(s), proceed to the associated section(s) of the citation to obtain the legal requirements related to each violation and then read the section titled, "Responding to the Citation" if you wish to respond.  While your company has not been accused of any of the other unchecked violations listed below, you might find it useful to familiarize yourself with the other

---

[1] 47 U.S.C. § 227; 47 C.F.R. § 64.1200.  A copy of these provisions is enclosed for your convenience.  Section 227 was added to the Communications Act by the Telephone Consumer Protection Act of 1991 and is most commonly known as the TCPA.  The TCPA and the Commission's parallel rules restrict a variety of practices that are associated with telephone solicitation and use of the telephone network to deliver unsolicited advertisements or prerecorded and autodialed telephone calls..  47 U.S.C. § 64.1200(a)(3); *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 – Junk Fax Protection Act of 2005*, Report and Order and Third Order on Reconsideration, 21 FCC Rcd 3787 (2006) (*2006 TCPA Report and Order*).

[2] We have attached 14 complaints at issue in this citation.  The complaints address alleged TCPA violation(s) that contain the telephone number 212-967-8033, which you or your business utilized during the time period at issue.

**Federal Communications Commission**

sections so that you or your company will be better informed of the Commission's Telecommunications Consumer Protection Act ("TCPA") rules.

☐ FACSIMILE VIOLATIONS

      ☐ Unsolicited Fax Advertisement (See Section I(A) – page 1)
      ☐ Incomplete Fax Header (See Section I(B) – page 2)
      ☐ Insufficient Opt-Out Notice (See Section I(C) – page 2)
      ☐ Opt-Out Request Not Honored (See Section I(D) – page 3)

☒ PRERECORDED AND AUTODIALED CALL MESSAGE VIOLATIONS

      ☒ Prerecorded or Autodialed Call to a Cell Phone, Emergency Line or Health Care Facility (See Section II(A) – page 4)
      ☒ Prerecorded Call to a Residential Line (See Section II(B) – page 5)
      ☐ Prerecorded Line Seizure (See Section II(C) – page 6)
      ☐ Prerecorded Identification Not Provided (See Section II(D) – page 7)

☐ DO-NOT-CALL VIOLATIONS

      ☐ National Do-Not-Call  (See Section III(A) – page 7)
      ☐ Company-Specific Do-Not-Call (See Section III(B) – page 8)

☐ TIME OF DAY VIOLATION (See Section IV – page 9)

      **If, after receipt of this citation, you or your company violates the Communications Act or the Commission's rules in any manner described herein, the Commission may impose monetary forfeitures not to exceed $16,000 for each such violation or each day of a continuing violation.**

**RESPONDING TO THE CITATION**

      You may respond to this citation within 30 days from the date of this letter either through (1) a written statement, (2) a teleconference interview with the Commission's Telecommunications Consumers Division in Washington, DC or (3) a personal interview at the closest Commission Field Office.  Your response should specify the actions that you are taking to ensure that you do not violate the Commission's rules governing TCPA violations, as described above.

      **If you would like to submit a written statement, including any supporting documentation, send the response within 30 days of the date of this letter to the address below.  If you would like to arrange a teleconference interview, please contact Al McCloud at (202) 418-2499.  You should schedule an interview to take place within 30 days of the date of this letter.**

Joshua Zeldis
Assistant Division Chief
Telecommunications Consumers Division
Enforcement Bureau
Federal Communications Commission
445-12th Street, S.W., Rm. 4-A122
Washington, D.C.  20554

**Reference EB-10-TC-435 when corresponding with the Commission.**

Reasonable accommodations for people with disabilities are available upon request. Include a description of the accommodation you will need including as much detail as you can. Also include a way we can contact you if we need more information.  Please allow at least 5 days advance notice; last minute requests will be accepted, but may be impossible to fill.  Send an e-mail to fcc504@fcc.gov or call the Consumer & Governmental Affairs Bureau:

For sign language interpreters, CART, and other reasonable accommodations: 202-418-0530 (voice), 202-418-0432 (tty);

For accessible format materials (braille, large print, electronic files, and audio format): 202-418-0531 (voice), 202-418-7365 (tty).

Under the Privacy Act of 1974, 5 U.S.C. § 552(a)(e)(3), we are informing you that the Commission's staff will use all relevant material information before it, including information that you disclose in your interview or written statement, to determine what, if any, enforcement action is required to ensure your compliance with the Communications Act and the Commission's rules.

The knowing and willful making of any false statement, or the concealment of any material fact, in reply to this citation is punishable by fine or imprisonment under 18 U.S.C. § 1001.

Thank you in advance for your anticipated cooperation.

Sincerely,

Joshua P. Zeldis
Assistant Division Chief
Telecommunications Consumers Division
Enforcement Bureau
Federal Communications Commission

Enclosures

# EXHIBIT 2

## CERTIFICATE OF INCORPORATION

### OF

### MANASSEH JORDAN MINISTRIES, INC.
(Pursuant to Article 8 of the Religious Corporation Laws)

We the undersigned, all being of full age, for the purpose of forming a Religious Corporation pursuant to and in conformity with Article 8 of the Religious Corporation Law of the State of New York hereby certify as follows:

1. That a notice of the meeting of the members of **MANASSEH JORDAN MINISTRIES** for the purpose of incorporating a unincorporated Religious Congregation was duly given in pursuance of Section 160 of the Religious Corporation Law and said meeting was held in accordance therewith on the 7th Day of September, 2010 in the afternoon of that day at Riverside Drive, New York, NY 10025.

2. At said meeting, Manasseh Jordan known as the Prophet and one of the subscribers hereto, was the presiding officer, at which meeting a majority of the qualified voters, being six in number, were present.

3. That Charlie Berrian, Naomi Cook, and Aaron Jordan the other subscribers hereto, were present and voted thereat.

4. That at such meeting it was determined to incorporate such church as a Religious Corporation in pursuance of Section 161 and 162 of the Religious Corporation Laws.

5. The names and addresses of the persons duly elected as Trustees at such meetings for the unexpired term until the next annual meeting are as follows:

| NAME | ADDRESS |
|---|---|
| 1st Annual Election   Charlie Berrian | 76 Cauthers Road Woodridge, NY 12789 |
| 2nd Annual Election   Naomi Cook | 4 Bayberry Court Upper Saddle River, NJ 07458 |
| 3rd Annual Election   Aaron Jordan | 1 High Meadow Road Tuxedo, NY 07458 |

One third to hold office until the first annual election of trustees thereafter, one third to hold office until the second annual election thereafter, and one third to hold office until the third annual election thereafter respectively.

NOV - 8 2010

7. The name of this church shall be **MANASSEH JORDAN MINISTRIES, INC.**

8. The principle place of worship of said church shall be located in the State of New York, the County of New York or any other place as the church may deem appropriate. The current address of the church is 310 Riverside Drive, New York, NY 10025

9. The purpose for which this church is to be formed is as follows:

   a. To establish and maintain and operate one or more places of worship for members of the church and anyone wishing to fellowship with the Church, to promote, continue and encourage the assembly of persons, on a regular basis, for the purpose of Divine Worship, Spiritual Fellowship and Religious Observances according to the Christian Faith.

   b. To provide a vehicle and institution for the promulgation, preaching and teaching, of belief and faith in God through Jesus Christ.

   c. To institute, participate in and/or support, all worthy activities and projects Divinely inspired or assigned.

   d. To conduct religious services, promote religious education, training and general community work and to assist benevolent charitable and worthy causes of a similar nature.

   e. To provide religious worship services on a non discriminatory basis without regard to race, color, creed, sex, religion, ethnic or national origin.

   f. To organize missionary work for the teaching of the Gospel of Christ, within and without the United States of America according to the tenets of the Christian Church.

   g. To promote the teaching of the Gospel of Jesus Christ among the members of the Church and also among the non members according to the tenets of the Christian Church.

   h. To develop multi-service programs and services in the local community and the community at large to assist in the religious, educational and social growth of the congregation, community and the world.

   i. To rent, lease or purchase such buildings or edifices which might be needed by the congregation; to alter or repair the same, and dispose of the same when no longer needed or used by the Church.

   j. To buy vacant land or buildings; alter, develop, build or repair the same for the use of the Church, and dispose of the same when no longer needed.

   k. To hold and operate such property which shall come into the possession of said Church; and sell, assign, transfer and otherwise dispose of any and all of the securities, properties and rights which may at any time be acquired or held by the Church and in all respects to deal with and in the same, in so far as may lawfully be done under the provisions of the Religious Corporation Law.

   l. To borrow money and to contract debts when necessary for the exercise of its corporate rights, privileges, or for any other lawful purpose of its corporation; and it may issue and dispose of its obligations from time to time, for and of the objects or purposes of the Church, and to mortgage its property, and/or to make such deed

of trust as may be necessary to secure the payment of such obligation or of any debts contracted for such purpose.

m.  To enter into, make perform and carry out contracts with any person, firm, corporation, private, public, municipal or political body, under the Government of the United States of America, and foreign countries, so far and to the extent that the same may be done and performed under the provisions of the Religious Corporation Laws of the State of New York.

n.  To do anything and everything that is proper to the aforesaid purposes and which may properly be done by a Religious Corporation organized under and subject to the laws of the State of New York: to possess all rights and privileges, and exercise all powers, permitted to such a corporation, including, without limitation, the power to solicit monies and contributions from the general public.

o.  The Prophet of this church is Manasseh Jordan.

10.  The duration of the church shall be perpetual.

11.  The Trustees shall be three in number or such other number as may be determined at any annual meeting, with Prophet Manasseh Jordan, ex-officio member thereof.

12.  That in September, 2011 and each year thereafter, there shall be held the Annual Meeting of the church for the purpose of electing Trustees and other officers and for such other business which shall come before the church at the said meeting.

13.  Notwithstanding any other provision of these articles, the corporation shall not carry on any other activities not permitted to be carried on (a) by a corporation exempt from Federal income tax under Section 501(c)(3) of the Internal Revenue Code (or corresponding section of any future Federal tax code.)

14.  No part of the net earnings of the corporation shall inure to the benefit of, or be distributable to its members, trustees, directors, officers or other private persons, except that the corporation shall be authorized and empowered to pay reasonable compensation for services rendered and to make payments and distributions in furtherance of Section 501(c)(3) purposes.

15.  No substantial part of the activities of the corporation shall be the carrying on of propaganda, or otherwise attempting to influence legislation, and the corporation shall not participate in, or intervene in (including the publishing or distribution of statements) any political campaign on behalf of or in opposition to any candidate for public office.

16.  Upon dissolution of this corporation assets shall be distributed for one or more exempt purposes within the meaning of Section 501(c) (3) of the Internal Revenue Code, i.e. charitable, educational, religious or scientific, or corresponding section of any future Federal tax code, or shall be distributed to the Federal government, or to a state or local government for a public purpose.

3

IN WITNESS WHEREOF, we have executed and acknowledged this certificate this _____ day of _____ , 2010,

Manasseh Jordan
2 Avery Street 27F
Boston, MA 02111

Charlie Berrian
76 Cauthers Road
Woodridge, NY 12789

Aaron Jordan
1 High Meadow Road
Saddle River, NY 07458

Naomi Cook
4 Bayberry Court
Upper Saddle River, NY 07458

State of New York
County of New York

On _____ day of _____ , 2010 before me personally appeared Manasseh Jordan, Charlie Berrian, Aaron Jordan and Naomi Cook known to be the same parties who executed the above Certificate of Incorporation and acknowledge to me that they executed the same.

Notary Public

STEPHANIE C GILBERT
Notary Public, State of New York
No. 01GI6079263
Qualified in Bronx New York
Commission Expires June 02, 2011